UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
THEO BULLMORE, et ano., etc.,

                              Plaintiffs,


               -against-                                      05 Civ. 10206 (LAK)


BANC OF AMERICA SECURITIES LLC, et al.,

                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


                     **MEMORANDUM OPINION**


               Appearances:


                              Scott M. Berman
                              Robert S. Loigman
                              Heather J. Windt
                              Lee D. Vartan
                              FRIEDMAN KAPLAN SEILER & ADELMAN LLP
                              *Attorneys for Plaintiffs*

                              Steven Wolowitz
                              Henninger S. Bullock
                              Andrew J. Calica
                              MAYER BROWN ROWE & MAW LLP
                              *Attorneys for Defendant*


LEWIS A. KAPLAN, *District Judge.*

               Liquidators of two hedge funds – Bristol Fund, Ltd. ("Bristol") and Beacon Hill

Master, Ltd (the "Master Fund") – sue Banc of America Securities, LLC ("BAS") on behalf of the

funds for aiding and abetting a fraudulent scheme allegedly committed by the funds' investment

2

manager, Beacon Hill Asset Management, LLC, and its principals (collectively, "Beacon Hill"). They seek to recover (1) management fees paid to Beacon Hill and (2) the lost enterprise value of Bristol and the Master Fund as measured by the decline in value of the funds' portfolios as a result of the alleged fraud.[1]  BAS moves to dismiss the allegations against it.

*Background*

I.    *The Amended Complaint*

The gist of the amended complaint is that Beacon Hill reported fraudulently inflated net asset values ("NAVs") for Bristol, the Master Fund, and other hedge funds it managed, concealing that the funds actually were suffering substantial losses that ultimately led to their collapse in the fall of 2002. BAS allegedly assisted this scheme by providing false values for individual securities in the funds' portfolios to auditors at Beacon Hill's request.

The allegations are substantially the same as those made by the funds' investors in the related case *Fraternity Fund v. Beacon Hill Asset Management*.[2] Those allegations are described in detail in the Court's March 27, 2007 opinion in that case ("*Fraternity Fund II*"),[3] familiarity with which is assumed. The additional allegations relevant to this motion are as follows.

---

[1]

Cpt. ¶ 112; Pl. Mem. 54.

"Cpt." refers to the amended complaint (docket item 19).

[2]

No. 03 Civ. 2387 (LAK).

[3]

__ F. Supp. 2d __, No. 03 Civ. 2387 (LAK), 2007 WL 926916 (S.D.N.Y. Mar. 27, 2007).

*A.      The Funds*

According to the amended complaint, Bristol is a Cayman-based hedge fund with directors in the Cayman Islands. Beacon Hill served as Bristol's investment manager.[4] It was paid a monthly advisory fee at an annual rate of one percent of the fund's NAV as well as an annual incentive fee equaling 20 percent of net profits, as measured by any increase in the fund's NAV over the value reported the previous year.[5]

In early 2002, Bristol, along with two other Beacon Hill-managed hedge funds – Safe Harbor Fund, LP ("Safe Harbor"), and Milestone Plus Partners, LP – became "feeders" into the Master Fund, which was incorporated in the Cayman Islands and had "a board consisting of independent directors with no . . . ties to Beacon Hill." Each fund transferred its assets to the Master Fund and "participated *pro rata* in the Master Fund's trading profits and losses." The investments of the feeder funds were managed collectively according to a single investment strategy.[6]

Pursuant to an investment management agreement executed shortly before the launch of the Master Fund (the "IMA"), Beacon Hill acted as the Master Fund's investment manager. Under the agreement, each feeder fund was to pay Beacon Hill its *pro rata* share of .0833 percent of the Master Fund's NAV each month. Bristol would pay an additional annual fee of 20 percent of any

---

[4]

Cpt. ¶ 21.

[5]

Bullock Aff. Ex. C (Investment Management Agreement, dated Mar. 19, 1997), § 5.

[6]

Cpt. ¶ 23.

4

net appreciation of its NAV during the fiscal year.[7]

According to plaintiffs, the IMA gave Beacon Hill "nearly complete discretion in effecting transactions to achieve the Master Fund's" investment objectives.[8] Indeed, Section 3 of the IMA provided that Beacon Hill would have broad authority to make investment decisions and manage the fund's assets.[9] Section 15 of the IMA provided further that Beacon Hill regularly would report the Master Fund's NAV. For purposes of determining NAV, securities in the fund's portfolio that were traded on exchanges or over the counter would be valued by looking at market quotations, but "[s]ecurities or other assets for which market quotations [were] not readily available [would] be valued at their fair value as determined in good faith in accordance with procedures adopted by the Investment Manager."[10] Plaintiffs allege that the feeder funds' portfolios consisted in large part of collateralized mortgage obligations ("CMOs").[11] As this Court noted in *Fraternity Fund II*, CMOs generally are not traded on exchanges, and their valuation requires a good deal of judgment.[12]

---

[7]

    Bullock Aff. Ex. D (IMA), § 9.

[8]

    Cpt. ¶ 24.

[9]

    *See* Bullock Aff. Ex. D, § 3.

[10]

    *Id.* § 15(b).

[11]

    *See* Cpt. ¶¶ 31-32.

[12]

    *See* 2007 WL 926916, at *8-10.

5

II.     *The Litigation*

Plaintiffs allege that the independent directors of Bristol and the Master Fund were deceived as to the actual value of the funds' assets as a result of Beacon Hill's fraudulent misrepresentations of NAVs. Had they known that the funds' NAVs were substantially lower than what Beacon Hill reported, they would have fired Beacon Hill as investment manager, thereby avoiding payment of management fees and substantial losses in the fall of 2002 when the funds collapsed.[13]

Plaintiffs sued Beacon Hill, among others, on behalf of the Master Fund in New York Supreme Court[14] for, *inter alia*, fraud and breach of fiduciary duty, as well as breach of the IMA for failure to adhere to the valuation procedures laid out in Section 15. They here sue BAS for aiding and abetting Beacon Hill's fraud and breach of fiduciary duty.[15]

*Discussion*

I.     *Motion to Dismiss Standard*

In deciding a motion to dismiss, the Court ordinarily accepts as true all well-pleaded

---

[13]

Cpt. ¶¶ 111-112.

[14]

*Bullmore v. Ernst & Young Cayman Islands*, Index No. 104314/05.

[15]

Plaintiffs sued also Prudential Financial, Inc., Prudential Equity Group, LLC, and Wachovia Securities, LLC (collectively "Prudential") for aiding and abetting Beacon Hill during periods prior to BAS's alleged involvement in the scheme. The Court dismissed these claims in an order dated March 27, 2007 (docket item 30).

The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

6

factual allegations and draws all reasonable inferences in the plaintiff's favor.[16] Dismissal is inappropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[17] Allegations of fraud and breach of fiduciary duty consisting of fraud, however, are subject to a higher standard under Rule 9(b).[18] That standard is laid out in *Fraternity Fund II* and need not be repeated here.[19]

II.      *Sufficiency of Allegations*

In order to recover on a claim for aiding and abetting fraud, plaintiffs must establish that Beacon Hill defrauded plaintiffs, BAS knew of the fraud, and that BAS lent substantial assistance to Beacon Hill in committing the primary wrong. Similarly, to recover on a claim for aiding and abetting breach of fiduciary duty, plaintiffs must show that Beacon Hill breached a fiduciary duty owed to them, BAS knowingly induced or participated in the breach, and  plaintiffs suffered damage as a result of the breach.[20]

For the reasons stated in *Fraternity Fund II*, plaintiffs' allegations are inadequate

---

[16]

     *E.g.*, *Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 14 (2d Cir. 2001), *cert. denied*, 535 U.S. 1054 (2002).

[17]

     *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).

[18]

     FED. R. CIV. P. 9(b).

[19]

     *See* 2007 WL 926916, at *7.

[20]

     *Id.* at *7-8 (citing cases).

under Rule 9(b) to plead BAS's actual knowledge of primary violations, if any, prior to April 2002.[21]

What remains to be considered is BAS's motion insofar as it seeks dismissal of the allegations that

BAS aided and abetted Beacon Hill in connection with the Master Fund's audit in May 2002.

As the Court held in *Fraternity Fund II*, plaintiffs adequately have alleged that

Beacon Hill materially misstated the Master Fund's NAV in the 2002 audited financial statement.[22]

Furthermore, plaintiffs allege here that the Master Fund's independent directors relied on Beacon

Hill's misstatement in maintaining Beacon Hill as investment manager while Beacon Hill's

principals engaged in self dealing and mismanaged the fund. This is sufficient to allege a primary

fraud. It is sufficient also to allege a primary breach of fiduciary duty, as Beacon Hill stood in a

fiduciary relationship to the Master Fund as its investment advisor.[23] Moreover, the Court already

has held that plaintiffs sufficiently have alleged that BAS had actual knowledge that Beacon Hill

misstated the Master Fund's NAV in connection the fund's 2002 audited financial statement.[24]

BAS argues that plaintiffs have failed sufficiently to plead that BAS's actions

proximately caused the second kind of damages plaintiffs seek – loss of enterprise value – and

therefore have not satisfied the substantial assistance prong.[25] It argues that any connection between

---

[21] *Id.* at *15.

[22] *Id.* at *8.

[23] *E.g.*, *Rasmussen v. A.C.T. Envtl. Servs. Inc.*, 292 A.D.2d 710, 712, 739 N.Y.S.2d 220, 222 (3d Dep't 2002) (citing *Scalp & Blade v. Advest Inc.*, 281 A.D.2d 882, 882-883, 722 N.Y.S.2d 639, 640 (4th Dep't 2001))).

[24] *Fraternity Fund II*, 2007 WL 926916, at *16.

[25] *See id.* at *16 (substantial assistance intimately related to concept of proximate cause).

BAS's actions and the loss in the Master Fund's portfolio value is too attenuated.

Taking plaintiffs' allegations as true, BAS's actions permitted Beacon Hill to overvalue the Master Fund's portfolio while concealing that the fund actually was experiencing substantial losses. Had the fund's directors known the true value of the fund, it is not unreasonable to conclude that they at some point would have questioned Beacon Hill's management strategy and urged it to take a different course or replaced it with a different investment manager. This especially is so in light of the allegation that Beacon Hill in the fall of 2002 reported that the fund's NAV had fallen by over 60 percent from the NAV reported as of August 31, 2002.[26] It is unlikely that the Master Fund's board would have taken no action had such drastic losses been reported earlier.

Nor would it be unreasonable to conclude that BAS foresaw that the Master Fund would suffer losses as a result of the Beacon Hill fraud.[27] While BAS may not have anticipated the fund's collapse in the fall of 2002, it nevertheless reasonably could have deduced that Beacon Hill overstated the Master Fund's NAV in order to conceal losses that likely would have been revealed at some point.

It is not certain that the Master Fund would have avoided its alleged losses had its directors known its true portfolio value. But the Court is not persuaded that plaintiffs can prove *no* set of facts based on these allegations that would entitle them to relief.

---

[26]
        Cpt. ¶ 115.

[27]
        *See id.* (proximate cause requires damages to have been reasonably foreseeable to alleged aider and abettor).

III.     *Standing*

       BAS argues next that the Master Fund lacks standing to recover lost enterprise value because it was the investors, not the fund itself, who suffered losses when the Master Fund's portfolio value dropped. It points to the Court's holding in *Fraternity Fund v. Beacon Hill Asset Management, LLC* ("*Fraternity Fund I*")[28] that a direct action by the fund's investors against Beacon Hill was proper.[29]

       In holding that a direct action by investors was proper, the Court made no comment as to whether an action by the fund itself would be proper. Indeed, plaintiffs have alleged not only that Beacon Hill defrauded investors, but also that it defrauded the directors of the Master Fund, who relied on misstatements of NAV in deciding to keep Beacon Hill on as investment manager. Under New York law, one may be liable both to a corporation and its shareholders if he or she violates independent duties owed to each.[30] Accordingly, the fact that the Master Fund's investors have a claim against Beacon Hill does not necessarily preclude an action by the fund itself.

       BAS contends also that the Master Fund's recovery in this case, if any, would be duplicative of any recovery by the investors in the *Fraternity Fund* case and that at least one possible damage theory should be rejected now. The argument is premature. As a preliminary matter, it is not clear what plaintiffs' theory of damages actually is – that is, whether plaintiffs seek to recover, for example, lost future revenues or lost business opportunities stemming from alleged damage to the

---

[28]     376 F. Supp. 2d 385 (S.D.N.Y. 2005).

[29]     *Id.* at 409.

[30]     *See, e.g.*, *Ceribelli v. Elghanayan*, 990 F.2d 62, 63-64 (2d Cir. 1993) (citing cases).

10

fund's reputation. More important, it is unclear at this stage whether the damages plaintiffs seek, whatever the theory, actually overlap with the damages sought by the investors in the *Fraternity Fund* case and, if so, by how much. The Court therefore is not in a position at this juncture to say that plaintiffs can prove no set of facts in support of their claim that would entitle them to any relief.

## IV.    *Duplication of Contract Claims*

BAS contends that plaintiffs have failed to state primary violations for purposes of the aiding and abetting claims because their allegations of fraud and breach of fiduciary duty merely seek to enforce the IMA. That is, it notes that Section 15 outlined the procedures by which Beacon Hill was to value the CMOs in the Master Fund's portfolio and argues that plaintiffs' tort claims essentially allege that Beacon Hill did not follow those procedures. This is unpersuasive.

Under New York law, claims of fraud and breach of fiduciary duty that merely duplicate contract claims must be dismissed.[31] Conduct constituting a breach of contract nevertheless is actionable in tort if "a legal duty independent of the contract itself has been violated."[32] "Such a duty may be independent of a contract and yet emerge from a relationship of trust and confidence

---

[31]
    *See, e.g.*, *William Kaufman Org., Ltd. v. Graham & James LLP*, 269 A.D.2d 171, 173, 703 N.Y.S.2d 439, 442 (1st Dep't 2000) ("A cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand."); *Morgan v. A.O. Smith Corp.*, 265 A.D.2d 536, 536, 697 N.Y.S.2d 152, 152 (2d Dep't 1999) ("A cause of action to recover damages for fraud will not lie when the only fraud alleged relates to a breach of contract.").

[32]
    *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 389, 521 N.Y.S.2d 653, 656 (1987).

created by a contract, as in the case of a lawyer and client."[33] In other words "the same conduct

which may constitute the breach of a contractual obligation may also constitute the breach of a duty

arising out of the relationship created by contract but which is independent of the contract itself."[34]

       In *Fraternity Fund I*, investors in Safe Harbor sued Beacon Hill for fraud and breach

of fiduciary duty based on the conduct alleged in this case. They sued also Safe Harbor's general

partner, Safe Harbor Asset Management, LLC ("Safe Harbor Asset Management"), which was

owned entirely by Beacon Hill,[35] for breach of contract. The limited partnership agreement among

Safe Harbor's investors and Safe Harbor Asset Management provided that securities in Safe

Harbor's portfolio that were traded on an exchange would be valued based on market quotations, but

that securities for which no market quotations were available would be valued according to Beacon

Hill's good faith judgment.[36]

       The defendants moved to dismiss the tort claims brought by Safe Harbor's investors

on the ground that they were duplicative of their contract claims against Safe Harbor Asset

---

[33]     *Fraternity Fund I*, 376 F. Supp. 2d at 408 (citing *GLM Corp. v. Klein*, 665 F. Supp. 283, 285-86 (S.D.N.Y. 1987); *Rich v. New York Cent. & Hudson River R.R. Co.*, 87 N.Y. 382, 395 (1882)).

[34]     *Id.* (quoting *Mandelblatt v. Devon Stores*, 132 A.D.2d 162, 167-68, 521 N.Y.S.2d 672, 676 (1st Dep't 1987)); *see Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (fraud claim stemming from breach of contract may be maintained if plaintiff can demonstrate a breach of a legal duty separate from the duty to perform under the contract, among other possibilities (citing cases)).

[35]     Beacon Hill Asset Management, LLC owned 99 percent of Safe Harbor Asset Management, and John Barry, a Beacon Hill principal, owned the remaining one percent.

[36]     *See* Amended Complaint in *Fraternity Fund v. Beacon Hill Asset Mgmt.*, 03 Civ. 2387 (docket item 42) ¶ 488 & Ex. S (partnership agreement between Safe Harbor and Safe Harbor Asset Management) at 3.

Management. The Court held, however, that while "the various tort claims and contract claim [were] based on the same underlying conduct – i.e., that defendants misrepresented NAVs," the allegations nevertheless were "sufficient to show a relationship of trust and confidence that flows from, but is independent of, the agreement" between Safe Harbor's investors and Safe Harbor Asset Management because a general partner stands in a fiduciary relationship to its limited partners.[37]

The language of Section 15 of the IMA is substantially the same as the language of the limited partnership agreement at issue in *Fraternity Fund I*.[38] And as noted, investment advisors owe fiduciary duties to their clients,[39] much as general partners owe fiduciary duties to limited partners. This especially is so where, as here, the investment advisor has broad discretion to manage the client's investments.[40] Accordingly, while the terms of the IMA provided that Beacon Hill was to value CMOs in good faith, the relationship it created imposed on Beacon Hill also a duty to act with care and loyalty independent of the terms of the contract. When Beacon Hill reported a false NAV in the Master Fund's 2002 audited financial statement, it breached that duty. Plaintiffs'

---

[37]
    *Fraternity Fund I*, 376 F. Supp. 2d at 408.

[38]
    *Compare* Bullock Aff. Ex. D, § 15(b) *with* Amended Complaint in *Fraternity Fund v. Beacon Hill Asset Mgmt.*, 03 Civ. 2387 (docket item 42) ¶ 488 & Ex. S at 3.

[39]
    *E.g.*, *Fraternity Fund I*, 376 F. Supp. 2d 385, 414 & n.182 (S.D.N.Y. 2005) (collecting cases).

[40]
    *See Moses v. Martin*, 360 F. Supp. 2d 533, 544 (S.D.N.Y. 2004) (fraud claim not duplicative of contract claim where defendant had broad discretion to negotiate deals on plaintiff's behalf and plaintiff relied on defendant's advice in structuring deals based on defendant's superior knowledge).

allegations of fraud and breach of fiduciary duty therefore are not duplicative of contract claims[41] and are sufficient to allege primary violations for purposes of the aiding and abetting claims.

The Court recognizes that a state motion court in an action brought by the Master Fund against Beacon Hill held that the fund's claims of breach of fiduciary duty based on misrepresentation of NAV were duplicative of its contract claims.[42] This Court respectfully disagrees. As one court has explained, "[a] legal duty independent of contractual obligations may be imposed by law as an incident to the parties' relationship. Professionals, common carriers and bailees, for example, may be subject to tort liability for failure to exercise reasonable care, irrespective of their contractual duties."[43] Similarly, individuals in positions of trust, such as attorneys, general partners or, more relevantly, investment advisors, are subject to liability for breach of fiduciary duty when they deceive or defraud their clients. "In these instances, it is policy, not the parties' contract, that gives rise to a duty of due care."[44]

---

[41]

    *See Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 552, 583 N.Y.S.2d 957, 962 (1992) (alarm monitoring service's negligent failure to report fire alarm to building owner sounded both in contract and tort where the nature of its services and its relationship with its customer gave rise to a duty of reasonable care that was independent of its contractual obligations).

[42]

    *See* Bullock Aff. Ex. F (*Bullmore v. Ernst & Young Cayman Islands*, Index No. 104314/05, opinion of Justice Charles Edward Ramos, New York Supreme Court, N.Y. County, Apr. 12, 2006) at 22.

[43]

    *Sommer*, 79 N.Y.2d at 551, 583 N.Y.S.2d at 961 (1992) (citations omitted).

[44]

    *Id.* at 552, 583 N.Y.S.2d at 961 (citing authority).

14

*V.    Punitive Damages*

Finally, BAS argues that plaintiffs have not alleged sufficient grounds for punitive damages. Its arguments, however, are the same as those made and rejected in *Fraternity Fund II*.[45] Accordingly, plaintiffs' claims for punitive damages stand.

*Conclusion*

The motion to dismiss the amended complaint as to BAS [docket item 36] is granted insofar as plaintiffs allege BAS's liability for aiding and abetting prior to April 2002. It is denied in all other respects.

SO ORDERED.

Dated:          April 27, 2007

_____

Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[45]

2007 WL 926916, at *19.